May it please the Court, Counsel. I'm here on behalf of Plaintiff Appellant Shane Boda today. To recover on a theory of strict product liability under Minnesota law, a plaintiff must establish three things. First, that the product was unreasonably dangerous for its intended use, which I'll refer to as defective, but I want to be clear, I mean that in the legal sense. Second, that such condition existed when the product left the defendant's control. And third, that the condition was the proximate cause of the plaintiff's injury. This appeal today really focuses on that second element, whether the defect in the defendant here, Viant, control. And the question specific to this appeal is whether the evidence is sufficient when viewed in the light most favorable to Mr. Boda to create a question of fact on that. The magistrate below granted summary judgment dismissal in favor of Viant, finding that there was not sufficient evidence, and we submit that was an error for two reasons. First, the magistrate noted, but then, excuse me, but then disregarded evidence. Excuse me, one more. Noted, but then disregarded evidence that the crane was not misused or mishandled prior to the date that the A2B inexplicably fell off the crane. And second, the magistrate held the plaintiff to a higher standard than is appropriate under controlling law. With the Court's permission, I'd like to address those in reverse order. So starting with the appropriate standard here. Notably, the magistrate judge in her order dismissing the case, and this is found on page 40 of her order, and this is the same analysis applies whether we're discussing negligence or strict liability here. About eight lines down, quote, the inability of Boda to reasonably eliminate the possibility that improper handling left the crane — excuse me, that improper handling after the crane left Viant's control caused the ATBD to fail is equally fatal to his claim for negligence. Especially, Your Honor, that's not the standard. The standard does not reasonably eliminate the possibility. It's reasonably eliminate the probability. And that's a key difference here. A plaintiff is not required under Minnesota law to show that it is — to eliminate the possibility that there was other actions that contributed to this device falling off the crane. Everybody agrees that once that device falls off the crane, the crane is legally defective. The question then is, well, what caused that A2B to fall off? The evidence in the record from Mr. Galarnik, plaintiff's expert — plaintiff's expert who, by the way, was unchallenged — there was no Daubert motion. His qualifications to testify here are, in essence, conceded, and at least are not challenged now on — before this Court on appeal — is that these devices don't simply fall off. If — and if it fell off, it's because it was negligent — or, excuse me, not negligently — not correctly installed or secured to the crane. In essence, either a fatal or a defect in design or manufacture. This specific crane actually had had the anti-two-block fall off previously, before the — before the crane was delivered to — Violent leases these cranes out, and they leased the crane — this specific crane to another entity, and when it was returned, it was returned with a missing anti-two-block. Yeah. That doesn't necessarily mean it fell off, though, does it? It — I mean, because the reality of these anti-two-block devices, when you look at them, is that they can be jury-rigged around so they don't work, and people can take them off because they don't work, because there does seem to be, in the record, some indication that there are at least some crane operators that are not sold on these things as being absolutely beneficial to their work, or if I misread what's in the record. Correct, Your Honor, and I apologize. It's not my — it was not my intent to represent to the Court that the fact that the device — that the crane was returned to Violent prior to it going to Brown without an anti-two-block is evidence that it had fallen off. It could have, though. But evidence that it was missing. True. And, yes, it is possible that the previous lessee purposely removed it or something else happened to it. The cases that are cited in the — both in the magistrate's order and now on appeal by the respondents address a different situation. In each of those cases where the court, whether it be the Minnesota court or this court or any other circuits, have found that the evidence is not sufficient in those cases, all stem from a more significant lapse of time than is present here. In, you know, in Kerr, the dish case from the Minnesota Supreme Court, it was — the several times. Here, we have four days. Four days. Interestingly, the exact same amount of time that was present in the Holkestad case, the — where the Coke bottle exploded after being removed from the plaintiff's vehicle, and the Minnesota Supreme Court in that case, the majority said, that's sufficient. In the absence of any evidence that the bottle was mishandled, there is no evidence that the crane was mishandled here by Brown. And, again, I want to be clear, there's no evidence that the crane was mishandled by Brown Tank from the time it was delivered until the time the anti-tube lock fell off. In the briefing, there's a suggestion that Brown Tank was — mishandled the crane by continuing to operate it after the anti-tube lock fell off. That really speaks to the causation element, which the magistrate correctly found at the very least a jury question of, you know, can Brown Tank continue to operate this crane without the anti-tube lock by utilizing this workaround? Does that inoculate Viant? And the magistrate found, no, it does not. At the very least, it was foreseeable. What about the movement of the crane in a way that at least some witnesses felt was like more at an excessive rate of speed, but in any event, the crane was swaying in such a way that it was unusual, and I think the inference that they're trying to get us to draw is that there may have been damage to the A2B while that thing was being moved, and that would have been on Brown for having moved it in such a fashion. I agree that it's the inference that Respondents are trying to get the Court to make. I don't believe that inference is warranted, Your Honor, for two reasons. First, as Your Honor pointed out, that is potentially the testimony of some witnesses. There's also evidence that the operation of the crane was within the usual course. This is a rough-use crane. This is a crane that's designed or should be designed to handle such use. So if there's the testimony from Mr. Larson, the crane operator, who is, by the way, the sole witness who actually saw the incident when the anti-two block fell off, Mr. Harris conceded in his deposition that he didn't see it. You know, he saw the crane being operated, and then when asked if he remembered what happened, his testimony, and this is on, in our appendix at page 186 to 187, well, do you, well, I guess, no, I don't remember. I remember the two block, or I mean the headache ball. I didn't witness it, but the headache ball was kind of whipping around. So to the extent that there's testimony that this crane was arguably, I don't even want to say being mishandled, but to the extent that Mr. Harris's testimony could be read to suggest that, that's a fact question. And that is potentially a perfectly valid argument for the respondents to make to a jury and for a jury to determine. It is not a question for the magistrate judge to determine at the summary judgment stage. Turning back to that first issue of the magistrate finding, well, there's no evidence of what happened before May 22nd. And that's on, among other spots that she repeats that in her order, page, the top of page nine of her order, where she, or I guess it starts at the bottom of page eight, where she says, critically, there was no testimony from any witness about how the crane was operated on any of the days prior to May 22nd, or whether anyone other than Larson or Harris had access to it or operated it on any of those days, end quote. But if you turn two pages before that, you have, this is her summary of Mr. Larson, the crane operator's testimony. He inspected the crane each day and filled out the daily mobile crane inspection report. Larson marked an X on the inspection report. That meant the ATBD was, quote, in working order. Mobile crane inspection report indicated the condition was the ATBD was good. Larson testified that he was the one who did the daily inspections that week. Admittedly, he does not know whether anyone else would have been operating the crane, but there's no evidence to suggest that anybody else had. Mr. Harris also testified that, quote, to the best of his knowledge, the ATBD was functioning properly when the crane was delivered. Daily crane inspection was basically a walk-around inspection, very similar to the inspection that Viant did before the pre-delivery inspection. He recalled having operated the crane himself at some point before the day of Boda's injury. When asked whether Larson was, quote, the crane operator during those days, end quote, referring to the days from the day of delivery until the day the ATBD fell off, he testified that, quote, Larson pretty much operated the crane, end quote. In addition to all of that, Mr. Larson testified, this is on Appellant's Appendix, page 67, that whoever was running the crane would do the inspection report and it was him. Larson did the inspections all week. He testified that they were in the general course of moving sheets around, this is on the day of May 22nd, and the ATBD just snapped on its own, end quote. There was no reason why it should have come off there, and that Larson had not done anything that would cause the ATBD to fail. Before I run out of time for my principal argument, I want to just note that this Court's reversal of the summary judgment award in the Hughes case, Hughes v. American Jawa, is particularly instructive here. There, the Court was presented with a plaintiff's expert whose opinions were, in the words of this Court, based entirely on conjecture. If the motor, when presented in a hypothetical, if the motorcycle in that case had been properly, if the motorcycle had been properly maintained in the two and a half years since it had been manufactured, then it would be reasonable to assume that the problem was caused by a defect in designer-manufacturer. This Court commented that the testimony was conjectural, that it was abstract, that it failed to account for the possibility that the engine locked in that case due to improper maintenance, that the conclusion rested on, quote, somewhat tenuous grounds, and the expert had dubious qualifications. Nonetheless, this Court reversed summary judgment and found all of those credibility determinations and the weighing of that evidence is for the jury, not the Court. The facts here are stronger, and with that, unless the Court has any questions, I'll reserve the remainder of my time to rebuttal. Roberts. I don't see any questions. Mr. Maureen, when you're ready. May it please the Court, Counsel. I am David Maureen, and I am here on behalf of Defendants and Appellees Viant Crane, LLC and Viant Crane Service, LLC. For purposes of this case and this appeal, we treat them as a single entity. I'll refer to them as Viant. I intend to argue for about ten minutes and then yield the rest of the time to Mr. Nissen, who's here on behalf of Brown Tank. The issue in this case is the application of a narrow exception to a requirement that when a plaintiff relies on res ipsa laquitur to prove a products liability case under Minnesota law, there's a requirement that the thing that caused the injury is under the exclusive control of the defendant. If that is not the case, if the defendant did not have the exclusive control of the instrumentality, then the plaintiff has an additional burden to introduce evidence that reasonably eliminates the possibility of mishandling or misuse of the thing between the time that it left the exclusive control of the defendant and the time that the injury or the incident happened. Minnesota law is pretty clear on that. You see that in Lee versus Crookston Coca-Cola Bottling Company. That provides the elements for the strict products liability. Mr. Bowman read those elements to the court, and I believe he cited a different case, but it's the correct elements. But Lee goes further, and Lee says at page 329, also liability is not imposed where the injured party has not eliminated the probability that improper handling by intermediate parties may have caused the defect. We see that in Trost, that's an Eighth Circuit case from 1998, which requires the plaintiff to prove something more than the mere fact that the accident happened. Western Surety and Casualty Company says the same thing. It frames it in the context of circumstantial evidence. A plaintiff may rely on circumstantial evidence, but that evidence must be there, and it must not require the jury to speculate. The main case that the parties evaluate and analyze in the briefs is the Delayden case. And the quote for it, and that's also the main case that the magistrate relied on in granting summary judgment to Viant and Brown Tank. And in that case, it says a plaintiff is not required to eliminate with certainty all possible causes of an accident. But it is sufficient if the evidence reasonably eliminates improper handling or misuse of the product by others than the manufacturer, thus permitting the jury to reasonably infer it was more probable than not that the product was defective. Now, fundamental to whether we're looking at this from a product liability point of view or a res ipsa point of view, fundamental is this notion of exclusive control. The product's liability side, we have the plaintiff has the burden to prove the defect existed when it left the defendant's control. If it's res ipsa, exclusive control is an actual element of a res ipsa claim. In this case, Mr. Boda has failed to meet his burden to introduce that evidence. What we have is we have a gap in the evidence between the time that the crane was delivered and the time that the A2B fell off. The crane was delivered on May 19th, and we don't have a lot of evidence of the details of the situation and how that happened and what happened. We know that the operator, Chris Larson, was not present when the crane was delivered. We know that the foreman, Mike Harris, was not present when the crane was delivered. From that point until May 22nd, so that's four days later, we have no evidence whatsoever about how the crane was used or operated. Weren't there inspections done during that time period, though? There were inspections done. We think that inspection is different than evidence of use and or operation. So Chris Larson testified that while he did operate the crane during that time, he didn't know if anyone else did. We have no facts as to whether or not anybody else had access to the crane. We don't know where the crane was stored. We don't know were there other pieces of equipment on the site. These are all questions that we just don't know. All we have is these morning inspection sheets. Well, it is evidence, right? And what I'm wondering is that all things you're describing are all possibilities that may have happened, right? And what we're really talking about is the burden is to remove the probability that something has happened, right, in the interim while it's been in the exclusive control of the other party, right? It leaves the manufacturer or the owner. It's in some kind of shape. It's inspected evidence that it's all okay. Then you've got it inspected, you know, regularly, which would tend to indicate that there's not been any horrible misuse being done on this crane during those three or four days, right? And then there's a failure four days later. And you've raised there's all kinds of things that may have happened, but we have no evidence that it may have happened. What exactly is the burden on the plaintiff to show that those possibilities need to be eliminated as opposed to relying on probability? And should we be at all concerned about the use of the word possibility by the magistrate judge in light of the fact that the description and the cases cited to were all referring to probabilities anyhow? I mean, is it just, you know, drafting imprecision or is it an indication that the magistrate judge really was saying that they've got to eliminate every possibility? Because you are raising real possibilities. The question is, are they probable? Sure, I'll address the second part of your question first. No, I don't think there is a meaningful difference between probable and possible. Okay. In this context. I think, in fact, the quote from DeLayden that I shared earlier uses neither word. All it says is it is sufficient if the evidence reasonably eliminates improper handling or misuse of the product. So I don't think the fact that the magistrate used possible when it should be probable or vice versa, I don't think that's relevant here. With respect to the first part of your question, what is the plaintiff's burden? The plaintiff has the burden to introduce some evidence. An absence of evidence or a lack of evidence is not sufficient to create an issue of material fact. So, for example, the plaintiff could have introduced evidence that the keys for this crane were stored in an office trailer somewhere. That it was locked, that the site had a fence surrounding it that was gated at night. Those are just some examples of evidence that the plaintiff could have produced, could have asked in deposition, and didn't do. So what we're left with is the plaintiff has an affirmative burden to produce some sort of evidence, and they haven't done that here. Except for the inspection sheets, which, again, just show the state of the product at a snapshot in time. They don't have any evidence about how it was used, and they don't show whether it was used properly, misused, what have you. And do I understand that the device was stored for a short period of time, and did your folks get a chance to look at it? Are you talking about after it fell off? Yes, after it fell off. No. So I think that's an important factual point. The device fell off the crane approximately two weeks before Mr. Boda was injured. Brown Tank, as Judge Erickson, you pointed out, some operators, for whatever reason, find ways to circumvent these critical safety devices, and that's exactly what happened here. The device fell off, and we don't know what happened to it. Nobody had the opportunity to inspect it. When Viant Crane finally got the call from Brown Tank that there was something wrong and saying, hey, come out and fix this, it was June 8th. It was after the accident had happened, and even at that point, Brown Tank did not inform Viant that there was an injury. They just said, hey, this broke. Come out. So Viant hired a technician to come out, repair it, and I believe that person may have thrown it away. Because there was no, he had no idea that there was an injury, that there was going to be needed for any evidence. With the few remaining seconds I have, I'd like to briefly address the issue of the expert opinion. I think Mr. Galarnik's expert opinion is faulty for the same reason that Mr. Boda's claims are faulty. It's based on no facts, and the case law says an expert's opinion must be based on facts. That's from Hudson v. Snyder Body, Snyder Auto Body. Western surety case kind of describes an analytical shortcut where when we see the word if, that is indication that perhaps an expert may be speculating. And we see that in Mr. Galarnik's affidavit, paragraph 25. That's on appendix page 16. He says, if properly manufactured and installed, an A to B will not just simply fall off. That's pure speculation. We have no facts to support the claim for res ipsa or the product's liability that there was a defect present, and we have no, and Mr. Galarnik has no facts. Sometimes if is like indefinite, but if doesn't sound very indefinite in that particular sentence, right? I mean, if the expert had said when, you know, rather than if, it makes no difference in the English language, right? I mean, if in that particular sentence seems rather a definite statement, says if it's manufactured correctly and if it's installed correctly. And all of that would reside on your client, right? I mean, that in the end, the client's the person that sends it out. And so, if they've been manufactured correctly and if they'd installed it correctly, it doesn't fall off, right? And if it's not manufactured correctly and it's not installed correctly, it comes off your lot in an unreasonably dangerous condition, period. Your Honor, I see I'm out of time. May I respond briefly? Yes. So, I think you are correct. However, Mr. Galarnik also stated in his affidavit that there's no evidence of misuse. And I think that gets us back to that's the wrong burden. It's not the defendant's burden to... So, I get there are other problems you might find with that expert opinion. I was just kind of taking issue with your... Because I think that when we say generally if is a sign of speculation, it is in a lot of contexts. But it's not in others when if the if is all stuff that's under the control of the person with the duty, then it doesn't matter. That is fair, yes. And I do agree that if, if as a linguistical marker always meant speculation, your job would be much easier. Boy, wouldn't it? But we don't have that in the English language. So, there is some ambiguity there. Thank you very much. Thank you. I appreciate it. Mr. Nissen. Good morning, your honors. May it please the court. My name is Todd Nissen, and I'm here today on behalf of Brown Tank. And there are just a couple of things that I would like to talk about. Starting with the expert report, just a couple of additional points to make with respect to the decision of the district court judge to exclude that from evidence. And therefore, it's outside of consideration for purposes of the summary judgment motion. The standard of review, as I'm sure you all well know, is a clear abuse of discretion. It's not a de novo review with respect to the admissibility or inadmissibility of that decision. Number two is that plaintiff's expert does not have any more factual information than any of us have. His opinion is based on a very fleeting, momentary observance that Mr. Harris made concerning whether or not the anti-block was swinging wildly or not. Not exactly knowing what swinging wildly means. I don't think there is a definition in the dictionary for that. I take it your client does not have records as to who used the crane and when? Well, Your Honor, the burden of proof is on the plaintiff to explore and to try to develop its obligation under the law, which is to show that or to reasonably eliminate improper mishandling or misuse. And so those questions were touched on during discovery, but they were not conclusively investigated. So nobody asked you if you had any records as to who used the crane? Because that seems to be one of the big issues here is that there might have been other operators. Absolutely. In fact, Mr. Harris testified that Mr. Larson was not the only operator. We also know... Do you have any records that show who operated it? I'm not aware of any records and I'm not aware that if you look at the deposition testimony, some of these questions could have been asked and flushed out by a plaintiff's counsel, by Mr. Boda's counsel, and it just simply wasn't. So, for example, we know that Mr. Larson and Mr. Harris were not present when the crane was delivered. And yet there was no question raised by Boda's counsel, okay, well, who was present when the crane was delivered? Who got it off the rig? Who unpacked it, if you will, from its shipping condition? Who moved it the first time? Who moved it the second time? Why did they move it? How did they move it? Those questions are all unknown. And then we know that Mr. Harris himself operated the crane at least at one point, but then he was not asked the follow-up question as to how many times did you operate it? How did you operate it? Under what circumstances did you operate it? Did you potentially, you know, mishandle the crane? These questions simply weren't asked. This information was available, the interrogatories and depositions, could have drilled down on give me a list of everybody who touched that crane from the time that it was delivered until the time of the accident. And I want to talk to each of those individuals and find out what they did and why they did it and how they did it and under what circumstances they did it. And the record is empty with respect to that. And I want to point out the obvious, which is the absence of evidence is not the same thing as a genuine issue of material fact. Fact issue is I say there was red light, the other party says there was a green light. Now we've got a genuine issue of material fact. If the plaintiff simply doesn't carry its burden of proof and establish its elements under its cause of action, then summary judgment is appropriate. I see I'm out of time. Thank you, Your Honor. Thank you. Mr. Bowman. Counsel for Brown argued that or suggested that Mr. Galarnik's opinions had been stricken or had been excluded. I disagree with that. I just want to point out that the clock up here is not running. I don't know if that's, thank you. I would disagree with that, Your Honor. And, you know, footnote 7 on page 16 of the order, the magistrate's order said while Viant complains that Galarnik's opinions are, quote, speculative, end quote, Viant does not challenge Galarnik's credentials as an expert in this field, nor does Viant specifically move that Galarnik's opinions be excluded under Daubert. Turning back to, Mr. Marine mentioned, made I think the same mistake that the magistrate judge did when he was up here where he said that a plaintiff has to reasonably eliminate the possibility. Judge Erickson, you pointed out, you know, does it really matter when there's a distinction between possibility and probability? We would submit that absolutely it does. And while Mr. Marine said, you know, whether it's possibility or probability or vice versa, it's not vice versa. It's probability. Possibility is not the correct standard. And does it make any difference if the cases that are generally cited by the magistrate obviously set forth the, I mean, they're citing the right case law. And what I'm wondering is whether or not we have just a moment of maybe drafting imprecision or if it's that she applied the wrong standard. And that's my real question. I would submit that she applied the wrong standard. That this is not simply a matter where when the opinion was being drafted, somebody inadvertently used the word possibility. The magistrate's order views this through a possibility lens. You know, I would direct the Court's attention, Judge Malloy, to your opinion in the Hickerson v. Pride Mobility Case 470 F. 3rd, 1252, where the Court found that the circumstantial evidence need not be so strong as to compel the jury to rule in the plaintiff's favor and where multiple inferences may be possible is for the jury rather than the Court to resolve the factual disputes. I see I'm out of time. Unless the Court has any questions, we respectfully ask that the Court reverse the summary judgment award and remand for further proceedings. Thank you. Thank you. I want to thank the parties for their arguments here today. The case is submitted and taken under advisement. We will get back to you as soon as we can. Thank you.